# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 12-3223

———————————————

Curtis L. Cich,

*Plaintiff - Appellant,*

v.

National Life Insurance Company, a Vermont corporation; Penn Mutual Life
Insurance Company, a Pennsylvania corporation,

*Defendants - Appellees.*

—————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

—————————

Submitted: October 24, 2013
Filed: April 8, 2014

—————————

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

—————————

COLLOTON, Circuit Judge.

Curtis Cich sued National Life Insurance Company ("National Life") and Penn
Mutual Life Insurance Company ("Penn Mutual") after both companies denied his

claims for disability benefits under insurance policies they had issued to him. The district court[1] granted summary judgment for the insurance companies, and we affirm.

I.

Cich obtained his license as a doctor of chiropractic in Minnesota in January 1987 and established a practice in Maple Grove, Minnesota, shortly thereafter. During the course of his practice, Cich purchased two disability income policies and three business overhead expense policies from National Life. He also purchased a disability income policy from Penn Mutual. The policies provide monthly payments of various amounts and for various periods of time in the event that the insured suffers a "total disability."

The National Life disability income policies and one of the National Life business overhead expense policies define "total disability" as follows, with minor, immaterial deviations: "The Insured shall be deemed totally disabled only if the Insured . . . is unable to perform the material and substantial duties of the Insured's occupation due to . . . accidental injury . . . or . . . sickness." The other National Life business overhead expense policies similarly define "total disability" and "totally disabled" to mean "injury or sickness restricts your ability to perform the material and substantial duties of your regular occupation to an extent that prevents you from engaging in your regular occupation." The Penn Mutual policy states that the insured will be considered totally disabled only if certain conditions are met, including (1) "You are unable to do the substantial and material duties of your regular occupation" and (2) "Your total disability results from sickness or injury." The policies also require that to qualify as totally disabled, the insured must be receiving appropriate

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

medical care for the condition, with variations not material here regarding what qualifies as appropriate.[2]

Between 1988 and 2006, the Minnesota Board of Chiropractic Examiners received numerous complaints that Cich misled patients about treatment costs and insurance coverage. On March 27, 2008, the Board suspended Cich's chiropractic license for two years and ordered him to pay a $50,000 fine. The Minnesota courts upheld the two-year license suspension and reduced the fine to $30,000.

In April and May 2009, Cich submitted claims to Penn Mutual and National Life for disability benefits pursuant to his policies. Cich asserted that he was totally disabled as of February 5, 2009, because an "adjustment disorder with mixed emotional features" and symptoms including "extreme anxiety and stress" prevented him from operating his chiropractic practice. Cich reported that he last worked on March 27, 2008, and did not expect to return to practice.

Cich's submissions also reported that he first received treatment for his disability on February 5, 2009. His treatment provider was Karen Kramer, a licensed social worker. On six occasions between February and June 2009, Kramer and Cich engaged in talk therapy sessions and other treatment for Cich's condition. Kramer opined that Cich would be able to work, but not at his chiropractic practice because of its association with his anxiety. Kramer continued to treat Cich approximately once per month, until she concluded in October 2009 that Cich could continue treatment on an as-needed basis.

---

[2]Excerpts from the disability income policies appear in Cich's appendix. Appellant's App. 132-41, 146-52. Excerpts from the business overhead expense policies appear in the district court record. R. Doc. 35-1, at 21-22, 24-25; *see* R. Doc. 34, at 4-8; R. Doc. 51, at 13.

After collecting information about Cich's condition, National Life and Penn Mutual rejected his claims. Cich sued the insurers in Minnesota state court, and the insurers removed the case to federal court based on diversity of citizenship. National Life and Penn Mutual moved for summary judgment, arguing that Cich did not suffer from a total disability under the policies. The district court agreed and granted summary judgment for National Life and Penn Mutual on alternative grounds. The court first concluded that Cich failed to present sufficient evidence that his inability to work in his occupation was caused by a sickness or injury, as required by the policies, because his license suspension caused the inability to work. Second, the court determined that Cich was not disabled by an adjustment disorder as of March 2008 or thereafter, because he was not receiving appropriate medical care for a sickness as required by the policies.

Cich moved for partial summary judgment, arguing that he submitted proof of loss forms in April 2009, and that the policies required National Life and Penn Mutual to pay him benefits thereafter. Cich argued that because National Life and Penn Mutual had not received independent medical examinations to dispute Cich's disability until late 2011, he was entitled to disability payments for the intervening months regardless of the results of those examinations. The district court denied Cich's motion on the ground that the policies required more than mere submission of proof of loss forms to entitle him to benefits.

Summary judgment is appropriate when there is no genuine issue of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We review the district court's grant of summary judgment and denial of partial summary judgment *de novo*. *Myers v. Lutsen Mountains Corp.*, 587 F.3d 891, 892 (8th Cir. 2009). In this diversity case, we construe the policies according to Minnesota law. *See Orion Fin. Corp. of S.D. v. Am. Foods Grp., Inc.*, 281 F.3d 733, 738 (8th Cir. 2002).

## II.

Challenging the district court's grant of summary judgment for the insurance companies, Cich argues that even if his chiropractic license had not been suspended, his adjustment disorder prevented him from performing his occupation since the onset of the illness. Therefore, he contends, the district court erred by granting summary judgment for the insurers on the ground that the license suspension, rather than the adjustment disorder, caused his inability to work.

According to the policies issued by National Life and Penn Mutual, an insured is totally disabled if he is unable to perform his "occupation" or "regular occupation" due to injury or sickness. As of March 2008, Cich was unable to practice chiropractic because his license was suspended. An incapacity arising from license suspension is not a "sickness" or an "injury" that qualifies as a total disability under the policies.

Cich appears to contend, however, that there is a genuine issue of material fact as to whether he was disabled by the adjustment disorder before his license was suspended, so that he would qualify for benefits based on a disability caused by "sickness." That argument fails because Cich did not seek treatment for his adjustment disorder until February 2009, nearly a year after his license was suspended in March 2008. The policies require that an insured must be receiving appropriate medical treatment to qualify as totally disabled.

Once Cich lost his chiropractic license in March 2008, the practice of chiropractic no longer was an occupation from which he could become disabled by virtue of sickness in February 2009. The Penn Mutual policy defines the insured's "regular occupation" as his "usual work when total disability starts." The National Life disability income policies and one business overhead expense policy excerpted in the record define "occupation" as "the specialized occupation of the Insured at the time . . . disability begins" or "the occupation of the Insured at the time . . . disability

-5-

begins." An excerpt in the record from the other two National Life business overhead expense policies does not define "occupation," but the ordinary meaning of the term and its use in the context of the onset of a disability lead us to conclude—absent contrary evidence from Cich—that it likewise means the insured's usual work at the time disability begins. *See Webster's Third New International Dictionary* 1560 (1993) (defining "occupation" as "the principal business of one's life . . . a craft, trade, profession, or other means of earning a living"). As of February 2009, when Cich sought treatment for an adjustment disorder, the practice of chiropractic was not his usual work, because his Minnesota license was suspended, and the potential for practice in other jurisdictions was speculative. The sickness for which he was treated in 2009 thus did not disable him from his occupation as a chiropractor. *See, e.g.*, *Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 666 (9th Cir. 1997).

Cich contends in the alternative that he is entitled to benefits as of March 27, 2010, the date on which he was eligible to have his license reinstated, because the adjustment disorder prevented him from returning to the practice of chiropractic. The insurance policies, however, provide for benefits when an insured is totally disabled. An insured is totally disabled when injury or sickness renders him unable to perform the duties of his occupation. An occupation, under the policies, is the insured's regular work or occupation at the time the disability begins. In February 2009, the date when Cich alleges that his disability began, Cich was not engaged in the practice of chiropractic. That a sickness or illness might have prevented Cich from reestablishing a practice of chiropractic in March 2010 does not qualify him for disability benefits, because the sickness did not render him unable to perform an "occupation" under the terms of the policies.

Cich also argues that even if the insurers properly denied his claims for disability benefits, they were obligated to pay benefits immediately when he submitted proof of loss forms to National Life and Penn Mutual until the insurers obtained

independent medical examinations to dispute his medical condition. Cich asserts that his policies with National Life and Penn Mutual entitled the insurers to obtain independent examinations while his claims were pending or while benefits were being paid, but did not expressly state that the insurers could withhold payment until an examination was performed. Whatever the merit of this timing argument in a case where the insured is totally disabled and thus entitled to benefits at one time or another, we see no basis under the policies to require the insurance companies to pay benefits to an insured who is not totally disabled.

For these reasons, the district court correctly granted summary judgment for National Life and Penn Mutual and denied Cich's motion for partial summary judgment. The judgment of the district court is affirmed.

_____